IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| THOMAS R. MICHALOW, | ) | |
| Plaintiff, | ) | 2:16-CV-00464-CRE |
| vs. | ) | |
| DR. JOSEPH W. PASQUERILLA, INDIVIDUALLY AND IN HIS CAPACITY AS SUPERINTENDENT OF NORTHGATE SCHOOL DISTRICT AND; AND NORTHGATE SCHOOL DISTRICT, | ) | |
| Defendants, | ) | |

## **MEMORANDUM OPINION**[1]

CYNTHIA REED EDDY, United States Magistrate Judge.

### I. INTRODUCTION

Presently before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim [ECF No. 5]. For the reasons that follow the motion is granted in part and denied in part.

### II. BACKGROUND[2]

Plaintiff, Thomas R. Michalow ("Plaintiff") brings the instant civil rights action against his former employer, defendant Northgate School District ("Northgate" or the "school district") and Northgate's Superintendent, defendant Dr. Joseph W. Pasquerilla ("Dr. Pasquerilla"). Plaintiff was a tenured teacher at Northgate who taught, *inter alia*, German and Advanced

---

[1] All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

[2] The facts comprising the background of this case were derived from the complaint and must be taken as true for purposes of this decision.

Placement History. Plaintiff was suspended without pay by Dr. Pasquerilla on June 3, 2015, effective June 2, 2015. The events leading up to Plaintiff's suspension are as follows.

In January 2013, Plaintiff spoke at two public school board meetings concerning staff cuts being taken by the school district. Dr. Pasquerilla was present at these school board meetings. Following the end of a school day in either January or February 2013, Dr. Pasquerilla presented himself to Plaintiff's classroom and berated him for the public statements he made at the school board meeting regarding the staff cuts. During this encounter, Dr. Pasquerilla repeated several times to Plaintiff that Dr. Pasquerilla was in a "superior position" as Plaintiff's employer and directed that Plaintiff not express any of his concerns and/or voice any criticism regarding the Northgate staff cuts at any future school board meeting.

In September 2013, during another public school board meeting, Plaintiff expressed his opinion that the staff cuts had negatively affected the school district. After that school board hearing, Dr. Pasquerilla in September or October 2013, presented to Plaintiff's classroom at the end of the day and expressed frustration that Plaintiff had expressed his concerns with other members of the community regarding the staffing cuts and directed that Plaintiff refrain from criticizing how Northgate is managed and limit the content of his speech to the positive aspects of Northgate.

Between April and September 2014, Plaintiff, as he had done several times in the past, organized a non-Northgate sponsored trip for students and parents to Germany. Northgate school board approved this independent trip for students and parents and stated that it was not a Northgate-sponsored trip. Following the Germany trip, there were allegations that students were consuming alcohol. A *Loudermill* hearing occurred on June 19, 2014 regarding this accusation and Plaintiff was directed that no students were to consume alcohol on any future trip that he

planned, or else he could face disciplinary actions.

On May 19, 2015, Plaintiff was summoned to Dr. Pasquerilla's office. During this meeting, Dr. Pasquerilla advised Plaintiff of unspecified complaints about Plaintiff's Facebook postings depicting pictures from the recent prom that Plaintiff had chaperoned. Dr. Pasquerilla stated that he saw nothing in the posts that warranted an investigation, but directed that Plaintiff remove the private postings to which Plaintiff complied.

On May 22, 2015, which was the last day of school for seniors at Northgate, at the end of the day, two female students returned to Plaintiff's classroom to retrieve items left there before leaving the building. After the female students retrieved their items, Plaintiff escorted them into the video-surveilled hallway to bid them farewell and good luck. Plaintiff gave both female students a hug and one of the female students a kiss on the cheek. Later that day, Plaintiff was summoned to Dr. Pasquerilla's office. During this meeting, Plaintiff was advised that there was another unspecified complaint regarding Plaintiff's recent Facebook posts in which Plaintiff noted how he used the Greek word "agape" for love to describe his feelings for the students, a feeling he alleges is akin to a love of a fellow human being through sacrifice and not the type of love indicative of an intimate relationship. Dr. Pasquerilla directed Plaintiff to remove the post; Plaintiff complied.

Following the school day on May 22, 2015, Dr. Pasquerilla contacted Plaintiff by telephone to advise him that Plaintiff's employment was being suspended, but refused to tell Plaintiff the reasons for the suspension. At some point between May 22, 2015 and June 2, 2015, one of the female students, which Plaintiff had kissed on the cheek bidding farewell, and her mother had been summoned to the Northgate principal's office by Dr. Pasquerilla and informed that someone had witnessed something and were asked whether anything inappropriate had

3

transpired between the student and Plaintiff. The female student indicated that nothing inappropriate occurred between her and Plaintiff. On June 2, 2015, the female student and her mother were again summoned to the Northgate principal's office by Dr. Pasquerilla. At that meeting, Dr. Pasquerilla showed the student and her mother a surveillance video of Plaintiff giving the student a goodbye hug and kiss on the cheek. The student and her mother advised that they did not feel that anything inappropriate transpired between the student and Plaintiff, and the student informed Dr. Pasquerilla that she had been hugged by another male teacher at Northgate and had witnessed other teachers hugging other students. The student also admitted that Plaintiff had given her and other students rides from the school to their homes and the student's mother advised Dr. Pasquerilla that she had given Plaintiff permission to do so. Not long after this meeting, the female student and her mother were contacted by the Allegheny County Police and were questioned about Plaintiff's conduct that Dr. Pasquerilla questioned the female student and her mother about at the June 2, 2015 meeting. The Allegheny County Police declined to pursue the matter further.

Plaintiff was given another *Loudermill* hearing on June 2, 2015 concerning his conduct with the two female students and whether he gave students rides home. In a letter dated June 3, 2015, Dr. Pasquerilla advised Plaintiff that he had determined that Plaintiff had engaged in inappropriate contact and conduct with students, including but not limited to, hugging students, kissing students and driving students alone in his car. Dr. Pasquerilla also informed Plaintiff that he would recommend that his employment be terminated, that he was suspended indefinitely without pay effective June 2, 2015, and that he was restricted from entering any property owned or operated by the school district without express permission from Dr. Pasquerilla.

Plaintiff alleges that following his suspension and throughout the summer of 2015, there

4

was "an atmosphere of suspicion and rampant speculation" throughout the school district and community regarding Plaintiff's suspension. Compl. [ECF No. 1] at ¶ 54. He alleges that a school board member told a non-Northgate employee that Plaintiff was suspended for "doing something he shouldn't have done" and "heard multiple stories" as to the reasons for Plaintiff's suspension. *Id*. at ¶ 55. He further alleges that a Northgate teacher told a substitute teacher that Plaintiff "has been suspended for engaging in sexual relations with a student, rumors that [the teacher] said he personally did not believe." *Id*. at ¶ 57. He further alleges that the Northgate football coach informed that same substitute teacher that Plaintiff had been suspended for engaging in sexual relations with a student, rumors that the football coach did not believe.

Sometime during his suspension, Plaintiff sought medical leave for his previously documented Post-Traumatic Stress Disorder and was denied such leave on September 1, 2015.

Plaintiff initiated the present action on April 19, 2016 against Defendants Northgate School District and against Dr. Pasquerilla in his official and individual capacities. Plaintiff brings the following claims: (1) a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 against Dr. Pasquerilla in his official and individual capacities;[3] (2) "Retaliatory/Wrongful Discharge Contrary to Public Policy" against both Defendants, *see* Compl. [ECF No. 1] at p.29; (3) "Deprivation of Liberty without Due Process" against both Defendants, *see id*. at p.30; (4) a Pennsylvania state law claim for defamation pursuant to 42 Pa. Con. Stat. Ann. 8343(a) against Dr. Pasquerilla in his individual capacity; and (5) a Pennsylvania state law claim for intentional infliction of emotional distress against both Defendants. Likewise, Plaintiff seeks punitive damages for his claims.

---

[3] While Plaintiff asserts two claims of "First Amendment Retaliation" against Dr. Pasquerilla in his individual and official capacities, the Court finds no reason to treat the claims as separate, as the subject matter of these claims is seemingly identical.

### III. STANDARD OF REVIEW

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*quoting Twombly*, 550 U.S. at 556). Nevertheless, the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.,* 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Although a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." 550 U.S. at 555. Facial plausibility exists

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

(*Id.*) (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## IV. DISCUSSION

### 1. First Amendment Retaliation

Counts I and II of Plaintiff's complaint allege that he was retaliated against by being suspended without pay and denied medical leave for criticizing the school district's budget cuts at public school board meetings.

To state a claim pursuant to 42 U.S.C. § 1983 for retaliation in violation of the First Amendment, a plaintiff must show "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir.2006). "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory

7

conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir.2006) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir.2000)). As Defendants do not challenge whether Plaintiff has sufficiently alleged constitutionally protected conduct, the Court will, for purposes of this motion, assume that Plaintiff has satisfied this factor, which is a question of law. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). Defendants contend that Plaintiff's claim is insufficient because his complaint does not satisfy the second and third factors, both of which are questions of fact. *See Curinga v. City of Clariton*, 357 F.3d 305, 310 (3d Cir. 2004).

Defendants argue that Dr. Pasquerilla's conduct in berating Plaintiff after speaking at the school board meetings would not deter a person of ordinary firmness from exercising his right to speak, and "in fact, it did not deter the Plaintiff in this case" because he spoke at subsequent meetings on the same issue. *See* Defs.'s Br. in Supp. of Mot. to Dismiss [ECF No. 6] at 5-6. Defendants misapply the standard as a subjective one. It is not whether Plaintiff was in fact deterred from speaking, but whether an objective person would be deterred from speaking as a result of the conduct. *See Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012) (whether conduct is sufficient to determine a person of ordinary firmness from exercising his constitutional rights "is an objective inquiry and ultimately a question of fact"). Accordingly, this argument is rejected.

Defendants further contend that Plaintiff has not alleged temporal proximity to his constitutionally protected conduct and any retaliatory action. Plaintiff responds that he has adequately alleged causation through a "pattern of antagonism coupled with timing to establish a causal link." Pl.'s Op. Br. [ECF No. 10] at 6. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (a plaintiff can satisfy the temporal proximity factor by showing either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action,

or (2) a pattern of antagonism coupled with timing that suggests a causal link."). Plaintiff has adequately alleged a pattern of antagonism coupled with timing to establish a causal link for his First Amendment retaliation claim. He alleges that after making several public statements at school board meetings criticizing the school district's budget cuts – according to him – baseless investigations were made into his conduct regarding a non-school sponsored trip to Germany and concerning his – according to him – plutonic interactions with two female students and various Facebook posts regarding his relationships with students and he was ultimately suspended without pay for his alleged inappropriate actions with the students and subsequently denied medical leave. Plaintiff alleges that before he had criticized the school district, he had never received an unfavorable employment evaluation during his tenure at Northgate. Thus, Defendants have failed to demonstrate that the complaint has not satisfied the second and third factors of Plaintiff's First Amendment retaliation claim and their motion is denied in this respect.

2. <u>Fourteenth Amendment Procedural Due Process Violation</u>

Count IV of Plaintiff's complaint alleges that Defendants deprived Plaintiff of his liberty "to earn a living without due process of law and/or to run again for political office." Compl. at ¶95. Plaintiff does not indicate whether he seeks to state a procedural or substantive due process claim. Defendants seek to dismiss this claim and argue that the grievance and arbitration procedures in place and through which Plaintiff is currently participating satisfy procedural due process requirements. Plaintiff does not respond to Defendants' argument that he cannot set forth a procedural due process claim, but rather argues that he has adequately set forth a substantive due process claim. Seemingly, Plaintiff acknowledges that he is not bringing a procedural due process claim, but rather asserts a substantive due process claim. Because the issue of whether Plaintiff's allegations set forth a substantive due process claim has not been

9

brought before the Court, no determination will be made as to the viability of any alleged substantive due process claim. Accordingly, Defendant's motion is granted with respect to any claim that Plaintiff seeks to assert a procedural due process claim and denied with respect to any substantive due process claim.

   3. Wrongful Discharge/Retaliation

Count III of Plaintiff's complaint levies a claim against Defendants for "Retaliatory/Wrongful Discharge Contrary to Public Policy" and alleges that the Defendants wrongfully discharged him in retaliation for Plaintiff's public complaints about the school district cuts. Defendants move to dismiss this claim and argue that the common law claim for wrongful discharge under Pennsylvania law does not extend to union employees.

Plaintiff's claim for "Retaliatory/Wrongful Discharge Contrary to Public Policy" is dismissed without prejudice. Plaintiff does not cite to any recognizable constitutional, statutory or common law cause of action in his complaint relating to this claim, nor does he cite to any legal authority in his response to Defendants' motion to dismiss to support such a cause of action. Thus, he has failed to meet the standard set forth in Federal Rule of Civil Procedure 8 showing that he is entitled to relief. As such, this claim is dismissed without prejudice.

   4. Defamation

Count V of Plaintiff's complaint asserts a defamation claim against Dr. Pasquerilla in his individual capacity for Dr. Pasquerilla's investigation of Plaintiff's alleged improper contact with female students. Dr. Pasquerilla argues that Plaintiff has failed to state a defamation claim against him because Plaintiff has not alleged that Dr. Pasquerilla made any statement, there is no allegation that the investigation qualifies as defamation by innuendo, and that he otherwise is exempt from any defamation claim as a high public official.

"Defamation, of which libel, slander, and invasion of privacy are methods, is the tort of detracting from a person's reputation, or injuring a person's character, fame, or reputation, by false and malicious statements." *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 334 (Pa.Super.Ct.2008). Pennsylvania codified the elements of defamation as follows:

> The elements of Pennsylvania defamation law are defined by statute. In order to successfully establish a claim for defamation a plaintiff has the burden of proving:
>
> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to the plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
> (6) Special harm resulting to the plaintiff from its publication.
> (7) Abuse of a conditionally privileged occasion.

42 Pa.C.S. § 8343(a). Courts are charged with determining whether a particular statement is capable of a defamatory meaning. *Allied Med. Assocs. v. State Farm Mut. Auto. Ins. Co.,* No. 08–2434, 2008 WL 4771850, at *3 (E.D.Pa. Oct. 30, 2008). A statement is capable of a defamatory meaning if it "tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him," *Tucker v. Philadelphia Daily News*, 577 Pa. 598, 615, 848 A.2d 113, 124 (2004), or if it "ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession." *Giordano v. Claudio,* 714 F.Supp.2d 508, 526 (E.D.Pa.2010) (citing *Maier v. Maretti,* 448 Pa.Super. 276, 671 A.2d 701, 704 (1995)).

A defamation claim under Pennsylvania law may exist "where the words utilized themselves are not defamatory in nature, however, the context in which these statements are issued creates a defamatory implication, i.e., defamation by innuendo." *Mzamane v. Winfrey,* 693

F.Supp.2d 442, 477 (E.D.Pa.2010) (citations omitted). "Pennsylvania courts have shown a willingness to interpret relatively mild statements as being capable of a defamatory meaning." *Allied,* 2008 WL 4771850, at *3 n. 2. However, for a defamation by implication or innuendo claim to be successful, the "innuendo must be warranted, justified and supported by the publication." *Mzamane,* 693 F.Supp.2d at 478 (quoting *Livingston v. Murray,* 417 Pa.Super. 202, 612 A.2d 443, 449 (1992)). Likewise, "the literal accuracy of separate statements will not render a communication 'true' where . . . the implication of the communication as a whole was false." *Dunlap v. Phila. Newspapers, Inc.,* 301 Pa.Super. 475, 448 A.2d 6, 15 (1982).

Here, Plaintiff has not alleged any statement, communication or publication by Dr. Pasquerilla sufficient to state a defamation claim. Rather, Plaintiff points to various statements and/or insinuations made by non-parties, including a school board member, a school district teacher and the school district football coach that Plaintiff was being investigated for engaging in sexual relations with a student. *See* Compl. at ¶¶ 55-58. Plaintiff argues that these statements are "innuendoes" by virtue of Dr. Pasquerilla's investigation and state a valid defamation claim. The Court disagrees. It is axiomatic that to have a valid defamation claim, a statement must have been made. Plaintiff cannot bootstrap the statements made by Northgate employees to state a defamation claim against Dr. Pasquerilla.

Likewise, Plaintiff's reliance on *Pescatore v. Sch. Dist. of Philadelphia,* No. 1072 C.D. 2014, 2015 WL 5159437 (Pa. Commw. Ct. Feb. 27, 2015) to support his claim for defamation by innuendo claim is factually distinguishable. In that case, the school district suspended the plaintiff, an employee in the school district, for having acted as a whistleblower and reporting alleged improprieties concerning contracts awarded for services to be performed at various schools in the districts. *Id.* at *1-*2. The plaintiff was ultimately reinstated and the school

district issued a statement that was published in the Philadelphia Inquirer identifying several employees who were reinstated because there was no evidence of wrongdoing on their part. Plaintiff's name was left off of that list. *Id*. The court found that plaintiff had stated a claim for defamation by innuendo as the omission of his name in the list of employees cleared of wrongdoing was "an insinuation of [plaintiff's] wrongdoing." *Id*. at *11. Here, Plaintiff does not allege that Dr. Pasquerilla made any communication or issued any statement with regards to his suspension, or made any statement that could be considered an insinuation of Plaintiff's impropriety with a student. The mere fact that Dr. Pasquerilla continued to pursue an investigation into Plaintiff's conduct does not rise to a claim for defamation by innuendo. To state a claim for defamation, (by innuendo or otherwise), the plaintiff must allege that a communication was made concerning the complainant. Plaintiff is not absolved of that pleading requirement because he alleges the "rumor mill" began when the investigation started. Accordingly, Plaintiff's claim for defamation is dismissed with prejudice.

    5. <u>Intentional Infliction of Emotional Distress</u>

Count VI of Plaintiff's complaint alleges that Defendants intentionally inflicted emotional distress upon him by retaliating against him and worsened his Post-Traumatic Stress Disorder, he was admitted to the hospital to prevent suicide and seeks ongoing medical and psychological treatment for his extreme anxiety attacks, shortness of breath and heart palpitations.

Defendants argue that Plaintiff has not stated a claim for intentional infliction of emotional distress, as the conduct alleged does not rise to the level of extreme and outrageous behavior.

The Court agrees with Defendants that Plaintiff has failed to state a claim for intentional

13

infliction of emotional distress, as the Defendants' conduct as alleged by Plaintiff does not rise to the level of extreme and outrageous behavior required to state a claim.

To state a claim for intentional infliction of emotional distress ("IIED") under Pennsylvania law, the Plaintiff must allege the following with regard to the defendant's conduct: (1) it was extreme and outrageous; (2) intentional or reckless; and (3) it caused severe emotional distress. *Dingle v. Centimark Corp.*, No. CIV.A. 00-6418, 2002 WL 1200944, at *8 (E.D. Pa. June 3, 2002) (citing *Wisniewski v. Johns Manville Corp.*, 812 F.2d 81, 85 (3d Cir. 1987)). The Restatement (Second) of Torts provides guidance as to what constitutes extreme and outrageous conduct:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt.

Restatement (Second) of Torts, § 46, comment d. It is for the court to determine whether the conduct can be regarded as so extreme and outrageous so as to permit recovery. *Dawson v. Zayre Dep't Stores*, 499 A.2d 648, 649 (Pa. Super. Ct. 1985). Where reasonable minds may differ, it is for the jury to determine whether the conduct is sufficiently extreme and outrageous so as to result in liability. Restatement (Second) of Torts, § 46, comment h.

Here, Plaintiff's case for IIED is difficult to sustain, given that it is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988), *cert. denied,* 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990). "Employment termination is often an unpleasant business, but the attending routine unpleasantness that can surround a termination does not elevate the termination to the level of outrageousness: 'while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event.'" *Landmesser v. United Air Lines, Inc.*, 102 F. Supp. 2d 273, 281 (E.D. Pa. 2000) (quoting *Brieck v. Harbison–Walker Refractories,* 624 F.Supp. 363, 367 (W.D.Pa.1985), *aff'd. in relevant part,* 822 F.2d 52 (3d Cir.1987), *cert. dismissed,* 488 U.S. 226, 109 S.Ct. 546, 102 L.Ed.2d 512 (1988). "Human nature is such that gossip is to be expected when an employee is terminated and gossip can be counted as one of the "insults, indignities, threats, annoyances, petty oppressions, or other trivialities" that plaintiffs must expect to encounter." *Landmesser*, 102 F.Supp.2d at 281 (citing *Kazatsky v. King David Mem'l Park, Inc.*, 515 Pa. 183, 194, 527 A.2d 988, 993 (1987)).

Here, however upsetting the rumors about Plaintiff's suspension may be, there is no indication that the rumors about Plaintiff engaging in inappropriate conduct with female students was anything other than common-place gossip surrounding his suspension. Indeed, the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where the employer sexually harassed the employee and engaged in other retaliatory behavior. *See Bowersox v. P.H. Glatfelter Co.*, 677 F. Supp. 307, 310 (M.D. Pa. 1988); *Shaffer v. National Can Corp.*, 565 F.Supp. 909 (E.D.Pa.1983). Plaintiff's claims do not

rise to the level of outrageousness necessary to state a claim for IIED and this claim is dismissed with prejudice.

      6. <u>Punitive Damages</u>

Lastly, Defendants seek to strike Plaintiff's claim for punitive damages. Plaintiff concedes that punitive damages are not recoverable against the school district or against Dr. Pasquerilla in his official capacity, and those claims are dismissed with prejudice. To the extent that Dr. Pasquerilla seeks to dismiss any claim for punitive damages for claims against him in his individual capacity, such a determination is premature at the pleadings stage, as discovery is necessary to determine the validity of Plaintiff's punitive damages claim consistent with his remaining causes of action. *See Morse v. Lower Merion Sch. Dist.*, No. CIV.A. 96-CV-4576, 1996 WL 526852, at *1 (E.D. Pa. Sept. 16, 1996).

## V. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss is granted in part and denied in part. Defendants' motion is granted with respect to Count III ("Retaliatory/Wrongful Discharge Contrary to Public Policy") which is dismissed without prejudice, Count IV ("Deprivation of Liberty without Due Process) which is dismissed without prejudice insofar Plaintiff seeks to state a procedural due process claim, Count V (Defamation) which is dismissed with prejudice, Count VI (IIED) which is dismissed with prejudice, and Plaintiff's claim for punitive damages against the Defendants in their official capacities is dismissed with prejudice. Defendants' motion is denied in all other respects. An appropriate Order follows.

DATED this 22nd day of December, 2016.

                                          BY THE COURT:

                                          s/Cynthia Reed Eddy
                                          United States Magistrate Judge